**Charles W. SMITH, Plaintiff,**

v.

**NATIONSTAR MORTGAGE, LLC, Defendant.**

**Civil Action No. 2:15–cv–888–RMG**

United States District Court,
D. South Carolina.

Signed August 22, 2016

Filed August 23, 2016

Jamie A. Khan, Ross Alan Appel, McCullough Khan, Charleston, SC, for Plaintiff.

Bess Jones Durant, Thornwell Forrest Sowell, III, Tina Marie Cundari, Sowell Gray Stepp and Laffitte, Columbia, SC, Brian A. Calub, Robert A. Muckenfuss, Trenton Michael Grissom, McGuireWoods, Charlotte, NC, for Defendant.

## ORDER

Richard Mark Gergel, United States District Court Judge

This matter is before the Court on Defendant Nationstar Mortgage, LLC's, Motion to Seal Document (Dkt. No. 99). For the reasons discussed below, the Court **DENIES** the motion.

### Background

In March 2007, Plaintiff purchased a residence at 339 Cabell Street in Charleston, South Carolina. (Dkt. No. 91–3 at 5–6). Plaintiff renovated the property, (Dkt. No. 91–3 at 9–10), and refinanced the loan used to purchase the residence with SunTrust Mortgage, Inc. in September 2007.[1] (Dkt. No. 91–5). Plaintiff stopped making payments on the loan in September 2008, and on January 2, 2009, SunTrust declared the loan in default. Plaintiff and SunTrust entered into a loan modification agreement on May 15, 2009. (Dkt. No. 91–6).

On August, 31, 2010, SunTrust notified Plaintiff that he had been approved for a trial period plan under the Home Afforda-

---

1. Suntrust Mortgage was initially named as a defendant in this action. (Dkt. No. 1). Follow- ing mediation, Plaintiff and SunTrust settled, and SunTrust was dismissed. (Dkt. No. 85).

ble Modification Program (HAMP) trial agreement (Dkt. No. 91–7). The trial period plan required that he make three payments of $ 1,589.57 each in October, November, and December. The offer letter states in part:

> Congratulations! You are approved to enter into a trial period plan under the Home affordable Modification Program. This is the first step toward qualifying for more affordable mortgage payments ... To accept this offer, you must make new monthly "trial period payments in place of your normal monthly mortgage payment.... After all trial period payments are timely made and you have submitted all the required documents, your mortgage would then be permanently modified.... If each payment is not received by SunTrust Mortgage in the month in which is due [sic], this offer will end and your loan will not be modified under the Making Home Affordable program.

*Id.* at 2. Before the trial period plan finished, however, Plaintiff's mortgage was transferred to Defendant Nationstar.

On December 15, 2010, Nationstar sent Plaintiff a letter stating that it was now servicing his mortgage and that the mortgage was in default. (Dkt. No. 91–8). Plaintiff, who had already made his first two payment under the trial period plan, hand delivered his December payment to a SunTrust branch on December 22, 2010. (Dkt. No. 91–9). In a January 31, 2011 letter to Nationstar, Plaintiff stated that he was "going to keep making [his] 'trial' payments and [he defied Nationstar] to foreclose [him] over these issues." (*Id.* at 4).

On February 11, 2011, Plaintiff wrote a letter to Nationstar stating

> I was advised by Fannie Mae level II investigators yesterday that you needed profit and loss documents to begin the modification process of this loan again. I am submitting these documents under protest, as I have since September 2010 had an enforceable agreement for a trial modification in existence between Sun-Trust Bank and myself. I was also advised by the level II investigators that SunTrust had failed to report this September 2010 agreement to the Treasury Department and that this failure to report is what triggered my loan being transferred to Nationstar. As I have maintained all along, this situation has escalated to this level through the nonfeasance or malfeasance of someone other than me.

Nationstar subsequently denied Plaintiff's request for a permanent loan modification (Dkt. No. 91–11), and on March 23, 2011, Nationstar initiated foreclosure proceedings against Plaintiff. (Dkt. No. 91–16).[2]

On June 29, 2011, Nationstar sent Plaintiff a letter informing him that he was approved to enter into a trial period plan under HAMP. (Dkt. No. 91–13). Under the 2011 trial period plan plan, Plaintiff was to make three payments of $1318 in August, September, and October. (*Id.*). Plaintiff made these three payments, and continued to send Nationstar payments of $1318 each month. (Dkt. No. 91–15).

On December 31, 2014—after Plaintiff had consistently made the $1318 monthly payment for more than three years—Nationstar sent Plaintiff a check for $27,780.06 along with a letter stating that "[w]e have recently received payment on your behalf and are returning these funds as they are insufficient to bring your account current." (Dkt. No. 96–15).

---

**2.** The foreclosure proceeding was dismissed pursuant to Rule 40(j) of the South Carolina Rules of Civil Procedure on February 5, 2013.

**552**

On February 26, 2015, Plaintiff filed this action. (Dkt. No. 1).[3] Plaintiff's remaining causes of action stem from Nationstar's servicing of the mortgage and its refusal to recognize his completion of the 2010 and 2011 HAMP trial period plans. (Dkt. No. 68 (amended complaint)). Nationstar filed a motion for summary judgment (Dkt. No. 91), and Plaintiff attached a Federal National Mortgage Association (Fannie Mae) employee's affidavit to his response in opposition. (Dkt. No. 96–30). Nationstar subsequently filed this motion to seal the Fannie Mae employee's affidavit. (Dkt. No. 99). Plaintiff defers to the Court's judgment on this matter. (Dkt. No. 102).

### Discussion

█ Nationstar argues that the court should seal the Fannie Mae employee's affidavit because the public's right of access to the Fannie Mae employee's affidavit is outweighed by competing interests. The Court disagrees.

█ A trial court "may, in its discretion, seal documents if the public's right of access is outweighed by competing interests." *Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 302 (4th Cir. 2000). However, "[t]he common law presumes a right of the public to inspect and copy "all judicial records and documents." *Virginia Dep't of State Police v. Washington Post*, 386 F.3d 567, 575 (4th Cir. 2004) (quoting *Stone v. Univ. of Maryland Med. Sys. Corp.*, 855 F.2d 178, 180 (4th Cir. 1988) (internal quotation marks omitted)). The party seeking overcome this presumption bears the burden of demonstrating that a significant interest outweighs the presumption. *Id.* "Some of the factors to be weighed in the common law balancing test 'include whether the records are sought for improper purposes, such as promoting public scandals or unfairly gaining a business advantage; whether release would enhance the public's understanding of an important historical event; and whether the public has already had access to the information contained in the records.'" *Id.* (quoting *In re Knight Publ. Co.*, 743 F.2d 231, 235 (4th Cir. 1984)).

█ The overarching theme of Nationstar's motion to seal is that the publication of the affidavit could be damaging to Nationstar. This may very well be true. But whether a person could be damaged by the publication of a document it is not the standard by which the Court determines whether a document should be sealed.

The crux of Nationstar's argument for why the affidavit should be sealed is that it bears the following statement at the bottom of each page: "Proprietary and Confidential—Restricted—Pre-decisional—Not for publication. Contains Nonpublic Information under a Financial Agency Agreement with the U.S. Department of the Treasury. Confidential treatment is required." [4] Nationstar appears to sincerely suggest that "[t]he repeated language clearly states that the document was never intended to be made part of the record or relied upon by a party in this case." (Dkt. No. 99–3 at 4). If this were all it took to

---

**3.** SunTrust filed a motion to dismiss, which the Court granted in part and denied in part. (Dkt. No. 38). After mediation, Plaintiff and SunTrust came to a settlement, and the remaining claims against SunTrust were dismissed with prejudice. (Dkt. No. 85).

**4.** A copy of the referenced Financial Agency Agreement for a Homeownership Preservation Program under the Emergency Economic Stabilization Act of 2008 is available at https://www.treasury.gov/initiatives/financial-stability/procurement/faa/Financial_Agency_Agreements/Fannie% 20Mae% 20FAA% 20021809.pdf. The agreement states that Fannie Mae "shall take appropriate measures to ensure the confidentiality of nonpublic information and to prevent its *inappropriate* use . . . ." *Id.* at 4 (emphasis added).

outweigh the presumption of public access, no affidavit—indeed, no document—would ever be accessible to the public or relied upon by a party in *any* case because attorneys would simply mark it "Confidential." This cannot be the law.

Nationstar attempts to salvage its position by distinguishing this case from a case where a private litigant proclaims that his document is confidential. Because Fannie Mae is "speaking as a financial agent on behalf of the United States," so the argument goes, its "Confidential" stamp should bear some special significance. (Dkt. No. 99 at 2–3). That is simply not how our legal system functions. Government agencies do not have *carte blanche* to seal whatever information they desire by simply affixing a stamp. Courts must look beyond parties' hand waving and foot stomping to determine whether a compelling interest sufficient to warrant sealing the document at issue exists. Here, there is no such interest.

The three-page affidavit (1) identifies the Fannie Mae employee and her qualifications; (2) identifies HAMP's records processing system; (3) identifies four records relating to Plaintiff's loan; and (4) makes four factual statements based on the employee's review of the records. With the exception of the records relating to Plaintiff's loans and the facts ascertained from those records, the entirety of the affidavit contains publically available information.

The identity of Fannie Mae's employees is not a state secret. In addition, the existence and general function of HAMP's system of record, Investor Reporting 2 (IR2), is a matter of public record.[5] Fannie Mae itself publishes detailed reporting requirements on https://www.hmpadmin.com, which is available to anyone with access to the Internet. Accordingly, the only *potentially* sensitive nonpublic information that would warrant sealing this affidavit are the records relating to Plaintiff's loan or the facts the Fannie Mae employee ascertained from those records.

The Court next turns to the records to determine whether they support Nationstar's motion to seal. As a preliminary matter, Plaintiff's loan number is partially redacted to eliminate the danger of publishing personally identifying information. The first two records simply state that both SunTrust and Nationstar conducted a net present value (NPV) run of Plaintiff's loan through Treasury's Home Affordable Modification Program Base NPV Model in 2010 and 2011, respectively. Although nonpublic, this information is far from secret or sensitive. Fannie Mae requires servicers to use its NPV model for all loans being considered for HAMP, and the documentation of the Base NPV Model is publically available.[6] Without more,

---

**5.** "Fannie Mae serves as the sole data collector and record keeper for executed loan modifications and program administration. Fannie Mae collects its data and records in its "IR2" database, and Treasury's Homeownership Preservation Office (HPO) periodically validates the accuracy of IR2's incentive payment data ...." Congressional Oversight Panel, December Oversight Report: A Review of Treasury's Foreclosure Prevention Programs 76 (Dec. 14, 2010), *available at* https://www.gpo.gov/fdsys/pkg/CPRT-111JPRT62622/html/CPRT-111JPRT62622.htm. *See also* Factors Affecting Implementation of the Home Afford-

able Modification Program, SIGTARP–10–005 39 (Mar. 25, 2010) ("Treasury produces this information based upon data servicers report to the Investor Reporting 2 database—a transaction mortgage servicing system—which is maintained by Fannie Mae."), *available at* https://www.sigtarp.gov/AuditReports/Factors_Affecting_Implementation_of_the_Home_Affordable_Modification_Program.pdf.

**6.** Home Affordable Modification Program, Base Net Present Value (NPV) Model v5.02 Model Documentation, *available at* https://www.hmpadmin.com/portal/programs/docs/

this is insufficient to support a motion to seal.

The third record indicates that Plaintiff began a trial period plan with Nationstar in August 2011 that converted to an official modification in November 2011. The fourth record indicates that Nationstar cancelled the official modification and the trial period plan record from the IR2 system in August 2012 with a reason of "Offer Not Accepted by Borrower/Request Withdrawn." These records appear to be inconsistent with Nationstar's proffered reason for declining to permanently modify Plaintiff's loan. (*See* Dkt. No. 96–1 at 8 ("After [Plaintiff] made all three trial period payments, Nationstar declined to permanently modify the loan at least in part due to the existence of tax liens on the property.")). But Nationstar has failed to identify how this inconsistency constitutes a compelling interest sufficient to support sealing the affidavit.

Finally, the Court turns to the facts that the Fannie Mae employee ascertains from the records in IR2 that relate to Plaintiff's loan:

a. There is no record of SunTrust reporting a trial period plan to IR2.

b. There is no record of SunTrust reporting any trial period payments to IR2.

c. Nationstar reported to IR2 in February 2012 that it had initiated a trial period plan in August 2011 that converted to an official modification in November 2011.

d. Nationstar submitted a record to IR2 in August 2012 that cancelled (superseded the official modification and trial period plan record with a reason code of "Offer Not Accepted by Borrower/Request Withdrawn"

hamp_servicer/npvmodeldocumentationv502. pdf

(Affidavit at 2–3). Again, Nationstar has failed to demonstrate why this information outweighs the presumption of the public's right to access.

### Conclusion

Nationstar has failed to meet its burden of demonstrating a significant interest that outweighs the presumption of public's right to access. Accordingly, the Court **DENIES** Defendant Nationstar's motion to seal the affidavit (Dkt. No. 99) and orders the Clerk of Court to restore the original version of the affidavit to the docket (Exhibit 30).

**AND IT IS SO ORDERED.**